1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ANTHONY RODRIGUEZ, | Case No. 1:23-cv-01464-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT AND CLOSE THIS MATTER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (ECF Nos. 14, 16, 17) |

**I.**

**INTRODUCTION**

David Anthony Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the ALJ erred in discounting the opinion of psychiatric consultative examiner Michael Musacco, Ph.D.

For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 7, 9, 10.)

**II.**

**BACKGROUND**

**A.     Procedural History**

Previously, on July 8, 2013, Plaintiff protectively filed an application for supplemental security income.  The claim was initially denied on December 26, 2013, and upon reconsideration on February 5, 2014.   On November 12, 2015, Plaintiff appeared for a hearing before Administrative Law Judge ("the ALJ") Nancy Lisewski.  (AR 58-83.)  On December 17, 2015, the ALJ issued a decision finding Plaintiff was not disabled.  (AR 84-101.)  The Appeals Council denied Plaintiff's request for review in May 2017.

Plaintiff protectively filed an application for supplemental security income on June 30, 2017.  (AR 140.)   Plaintiff's application was initially denied on May 1, 2018, and denied upon reconsideration on July 13, 2018.  (AR 167-71, 177-81.)  Plaintiff requested and received a hearing before ALJ Debra L. Boudreau.  Plaintiff appeared for a telephonic hearing on April 8, 2020.  (AR 41-56.)  On April 22, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 14-33.)  On September 28, 2020, the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)

Plaintiff filed a third application for supplemental security income that was initially denied on December 7, 2020, and denied on reconsideration on March 3, 2021.  (AR 1529-32, 1533-37.) On June 24, 2021, the Appeals Council denied Plaintiff's request for review.  (AR 1542-46.)

On November 20, 2020, Plaintiff filed a complaint seeking judicial review of the final decision denying his application for benefits in his June 30, 2017 application.  (AR 1362-64.)  On December 15, 2021, the action was remanded pursuant to sentence four of 42 U.S.C. § 405(g).  (AR 1431-32.)  On June 11, 2022, the Appeals Council vacated the final decision, consolidated the subsequent application, and remanded the matter to the administrative law judge for further proceedings.  (AR 1437- 41.)

On December 13, 2022, Plaintiff received a hearing before ALJ Debra L. Boudreau.  (AR 1273-96.)  On April 4, 2023, the ALJ issued a decision finding Plaintiff was not disabled.  (AR 1237-59.)   On August 14, 2023, the Appeals Council denied Plaintiff's request to assume

1  jurisdiction.  (AR 1231-33.)

2  **B.    The ALJ's Findings of Fact and Conclusions of Law**

3  The ALJ made the following findings of fact and conclusions of law as of the date of the

4  decision, April 4, 2023:

5  1.  Plaintiff has not engaged in substantial gainful activity since June 30, 2017, the

6  application date.

7  2.  Plaintiff has the following severe impairments: cervical degenerative disc disease; aortic

8  aneurysm; optic neuropathy; hypertension; borderline intellectual functioning status post

9  cerebral vascular accident (CVA); bipolar disorder NOS with features of anxiety; and

10  substance-induced mood disorder.

11  3.  Plaintiff does not have an impairment or combination of impairments that meets or

12  medically equals the severity of one of the listed impairments.

13  4.  Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR

14  § 416.967(b).  Plaintiff can lift or carry about 20 pounds occasionally and 10 pounds

15  frequently.  He can stand or walk about six hours, and sit at least six hours, in an eight-

16  hour workday.  He should avoid work on ladders, ropes and scaffolds.  He can frequently

17  climb stairs and ramps.  He can frequently balance, stoop, kneel, crouch, and crawl.  He

18  can perform occasional work overhead with the bilateral upper extremities.  He should

19  not be required to perform tasks requiring very fine detailed work, such as jewelry repair,

20  or the use of finely calibrated instruments such as micrometers, but is otherwise able to

21  work normally with small, medium, and large objects.  He can work occasionally in a

22  closed environment with concentrated pulmonary irritants such as fumes, odors, dust,

23  and gases.  He should avoid work at unprotected heights or in close proximity to

24  dangerous moving machinery.  He should not engage in commercial driving.  He is able

25  to understand, remember and carryout simple, routine tasks that can be learned in a short

26  time, typically in 30 days.  He can sustain concentration, persistence and pace for these

27  tasks over an 8-hour workday and 40-hour workweek.  He can tolerate occasional

28  interactions with supervisors and coworkers; work duties should not require working

directly with the public, such as customer service work, but Plaintiff can otherwise tolerate occasional superficial interaction with the public.  He can make simple work decisions and adapt to routine-type task changes.  He is able to travel plus can recognize and avoid work hazards.

5.  Plaintiff has no past relevant work.

6.  Plaintiff was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed and subsequently changed age category to closely approaching advanced age.

7.  Plaintiff has at least a high school education.

8.  Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

9.  Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

(AR 1243-58.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

1  Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in

2  assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

13  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

14  on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

15  claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of

16  proof from step one through step four.

17     Before making the step four determination, the ALJ first must determine the claimant's

18  RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971,

19  at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations"

20  and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1);

21  416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are

22  not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p,

23  available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion,

24  but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§

25  404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1  determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

2  residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

3      At step five, the burden shifts to the Commissioner, who must then show that there are a

4  significant number of jobs in the national economy that the claimant can perform given his RFC,

5  age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

6  1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

7  ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury,

8  468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-

9  step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical

10  testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala,

11  53 F.3d 1035, 1039 (9th Cir. 1995)).

12      **B.    Standard of Review**

13      Congress has provided that an individual may obtain judicial review of any final decision

14  of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).  In

15  determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

16  the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

17  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

18  the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. §

19  405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

20  evidence which, considering the record as a whole, a reasonable person might accept as adequate

21  to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting

22  Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson

23  v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential

24  clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek,

25  139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a

26  preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland),

27  993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v.

28  Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse

1   the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden

2   of showing that an error is not harmless "normally falls upon the party attacking the agency's

3   determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

4        Finally, "a reviewing court must consider the entire record as a whole and may not affirm

5   simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

6   1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

7   Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

8   review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

9   Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

10  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

11  for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

12  the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

13  400 F.3d 676, 679 (9th Cir. 2005)).

14                                              **IV.**

15                                **DISCUSSION AND ANALYSIS**

16       Plaintiff alleges that the RFC determination is not supported by substantial evidence because

17  the ALJ failed to properly consider the opinion of consultative examiner Michael Musacco.  (Pl.'s

18  Motion for Summary Judgment ("Mot.") 16, ECF No. 14.)  Plaintiff argues that the ALJ failed to

19  consider that Dr. Musacco's findings are highly consistent with the abnormal psychiatric findings

20  documented throughout the record.  (Id. at 18-19.)  Plaintiff also contends that Dr. Musacco's

21  opinion was also consistent with the opinion of Dr. Kaura and the medical opinion submitted by

22  Plaintiff's treating physician.  (Id. at 19.)

23       Defendant responds that the ALJ found Dr. Musacco's opinion unpersuasive because Dr.

24  Musacco admitted he was hampered by the lack of clarity about Plaintiff's impairments; Dr.

25  Musacco noted that Plaintiff claimed to have suffered a stroke which he was unable to confirm due

26  to lack of access to medical records; and he summed up that Plaintiff presented with vague reports

27  of symptoms and imprecise information and the medical record did not describe any particular

28  symptoms of a mental or emotional issue.  (Def.'s Responsive Brief ("Opp.") 2-3, ECF No. 16.)

1   Further, Defendant argues that the ALJ found that Dr. Musacco's opinion was inconsistent with

2   other evidence in the record and found that Dr. Martinez' opinion was consistent with the objective

3   evidence throughout the record showing few mental abnormalities.  (Id. at 3.)

4       Plaintiff replies that the ALJ's limited analysis is based on a gross mischaracterization of

5   the record and unsupported by substantial evidence.  (Pl.'s Reply ("Reply") 2, ECF No. 17.)

6       **A.   Weighing Medical Opinions and Prior Administrative Medical**

7       Under the current regulations, the agency "will not defer or give any specific evidentiary

8   weight, including controlling weight, to any medical opinion(s) or prior administrative medical

9   finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§

10  404.1520c(a); 416.920c(a).  Thus, the regulations require an ALJ to apply the same factors to all

11  medical sources when considering medical opinions, and no longer mandate particularized

12  procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R.

13  § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion

14  or prior administrative medical finding from one medical source individually.");  Trevizo v.

15  Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).

16      "When a medical source provides one or more medical opinions or prior administrative

17  medical findings, [the ALJ] will consider those medical opinions or prior administrative medical

18  findings from that medical source together using" the following factors: (1) supportability; (2)

19  consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that

20  "tend to support or contradict a medical opinion or prior administrative medical finding."  20

21  C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the

22  persuasiveness of medical opinions and prior administrative medical findings are supportability

23  and consistency.   Woods v. Kijakazi, 32 F.4th 791 (9th Cir. 2022) (citing 20 C.F.R. §§

24  404.1520c(a), (b)(2)).  Regarding the supportability factor, the regulation provides that the "more

25  relevant the objective medical evidence and supporting explanations presented by a medical

26  source are to support his or her medical opinion(s), the more persuasive the medical opinions …

27  will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a

28  medical opinion(s) is with the evidence from other medical sources and nonmedical sources in

1  the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

2  Accordingly, the ALJ must explain in her decision how persuasive she finds a medical

3  opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §

4  404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other

5  remaining factors]," except when deciding among differing yet equally persuasive opinions or

6  findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required

7  to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

8  Nonetheless, even under the new regulatory framework, the Court still must determine whether

9  the ALJ adequately explained how she considered the supportability and consistency factors

10 relative to medical opinions and whether the reasons were free from legal error and supported by

11 substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3

12 (C.D. Cal. May 14, 2021).

13     **B.     Discussion**

14     In considering Plaintiff's mental limitations, the ALJ considered the opinions of the agency

15 physicians, Drs. Bilak and Bradley, consultative examiners Drs. Martinez and Musacco, and two

16 opinions by Plaintiff's treating providers.  (AR 1255-56.)  Plaintiff only challenges the ALJ's

17 finding as to the opinion of Dr. Musacco.

18     The ALJ found that Dr. Musacco's opinion was unpersuasive and largely unsupported.  The

19 ALJ noted that by Dr. Musacco's own admission, due to the lack of overall clarity about Plaintiff's

20 symptoms and diagnosis it was difficult to offer a strong opinion regarding Plaintiff's deficits.

21 Plaintiff presented with vague self-reported symptoms and provided poor articulation.  (AR 1256.)

22     On November 28, 2017, Dr. Musacco conducted a psychological evaluation of Plaintiff.

23 (AR 778-82.)  Dr. Musacco noted that Plaintiff was a poor historian making the evaluation difficult.

24 Plaintiff presented with vague complaints and a poor memory making gathering information

25 difficult.  (AR 778.)  Plaintiff was living in an apartment building for homeless individuals who

26 have been identified as having a mental disorder for the previous four years.  (AR 778-79.)  Plaintiff

27 began receiving mental health treatment four year prior and was prescribed antipsychotic,

28 antidepressant, and mood stabilizing medication.  Plaintiff reported that he suffered a head injury

1   when he was "beat up" by the policy in the early 1990s and believed that he had suffered a stroke
2   one week prior to the appointment.  He alleged right sided weakness but had not seen a physician
3   since the alleged event.  (AR 779.)

4           Mental examination revealed fair to marginal hygiene and grooming.  Plaintiff was able to
5   identify the date, month, and year.  His affect was withdrawn, and eye contact was poor.  Speech
6   was often confused and marginally articulated, at times, Plaintiff was difficult to comprehend.
7   Plaintiff described his mood in neutral terms and acknowledged a history of suicidal thoughts and
8   suicide attempts.  (AR 779.)  Plaintiff endorsed auditory hallucinations described as a male voice
9   that tells him to stay away from people.  These began four to five years prior and last occurred two
10  days prior to the examination.  He described vague paranoia indicating he is fearful everyone wants
11  to harm him for reasons he could not identify.  Dr. Musacco noted that Plaintiff provided him with
12  a vague report of symptoms with an unclear etiology and pattern and recommended that mental
13  health treatment records be obtained to shed light on these issues.  (AR 780.)

14          Plaintiff's performance on the WAIS-IV revealed significant deficits in his intellectual
15  functioning.  He reported with overt deficits in his cognitive functioning. (AR 780.)  Dr. Musacco
16  did not see evidence of malingering but noted that the scores were substantially depressed, and
17  Plaintiff had no history of an intellectual disability.  (AR 780-81.)  Dr. Musacco noted that Plaintiff
18  reported suffering from a recent stroke, but he had no records to confirm this.  He also noted that
19  Plaintiff's scores were universally depressed without a pattern of strengths and weaknesses
20  commonly observed in a head injured individual.  Plaintiff's scores on the WMS-III were also
21  significantly depressed.  The scores revealed pervasive and substantial impairment in Plaintiff's
22  memory skills.  (AR 781.)

23          Diagnosis was rule out neurocognitive disorder and stimulant use disorder, reportedly in
24  remission.  Dr. Musacco's summary and recommendations states:

25          The claimant is a 48 year old male who presents with a vague report of symptoms.
            I had difficulty obtaining precise information.  He presented with poor articulation
26          and confused thought processes.  His scores on psychological testing tasks were
            significantly depressed.  Unfortunately, the mental health treatment records were not
27          particularly useful and the medical records did not describe any particular symptoms
            of a mental/emotional issue.  The claimant reported that he suffered a stroke one
28          week ago but he has not yet been to the doctor.  I offer the Rule Out diagnosis of

1    Neurocognitive Disorder based on overt deficits noted in the claimant's
     communication skills and cognitive functioning.  He obtained significantly
2    depressed scores on tasks measuring his intelligence and memory.

3    I also referenced the diagnosis of a Stimulant Us[e] Disorder based on the claimant's
     self-report of a history of addiction to methamphetamine.  The records indicated that
4    the claimant was diagnosed with Bipolar Disorder but he did not describe any
     symptoms of mania.  The claimant also reported vague auditory hallucinations but
5    it is difficult to reach any other diagnostic conclusions.

6    A payee is recommended to ensure that the claimant's funds are adequately
     managed.
7
     Based on the lack of clarity about the claimant's symptoms and diagnosis, it is
8    difficult to offer any other strong opinions relative to the claimant's deficits.
     However, he showed a substantial impairment in his intelligence and memory skills
9    and he showed weaknesses in his communication skills.  Based on observations
     noted in today's evaluation, it appears unlikely that he would be able to interact
10   appropriately with coworkers or respond to the demands of a usual work situation.
     No other recommendations are offered.
11

12   (AR 781-82.)

13       The ALJ found that this was in contrast to the opinion of Dr. Martinez where Plaintiff

14   presented as a good historian and inconsistent with Dr. Martinez' mental examination which

15   showed a substantial improvement in overall intellectual functioning.  (AR 1256.)

16       On February 20, 2018, a comprehensive psychological evaluation was conducted by Dr.

17   Martinez.  (AR 943-51.)  Dr. Martinez found that Plaintiff had no difficulty focusing attention

18   during the examination.  Grooming was adequate and his attitude and cooperation were adequate

19   for the examination. (AR 946.) Plaintiff was able to volunteer information spontaneously and there

20   was no psychomotor agitation or retardation or evidence of exaggeration or malingering. (AR 946.)

21   Plaintiff's mood was noted to be dysphoric, and insight was limited, but the examination was

22   otherwise unremarkable.  (AR 946-48.) The WAIS-IV test showed borderline range of intelligence

23   with a full-scale IQ of 74, placing Plaintiff in the lower 4% of the population.  Dr. Martinez noted

24   that his score was lower than predicted and may be due to symptoms post status stroke.  (AR 948.)

25   The WMS IV scores indicate Plaintiff is in the extremely low to low average range in memory and

26   recall.  Dr. Martinez noted this did not correlate with his performance on the WAIS-IV and the

27   inconsistent memory functioning is suggestive of a post stroke impairment.  (AR 949.)  Plaintiff

28   was diagnosed with bipolar disorder, not otherwise specified; substance (methamphetamine)

induced mood disorder; borderline intellectual functioning; and a Global Assessment of Functioning of 65.  (AR 949.)

Dr. Martinez opined that Plaintiff had no impairment in his ability to understand, remember and carry out simple one or two step instructions; ability to maintain concentration, persistence, and pace; ability to associate with day to day work activities, including attendance and safety; ability to accept instructions; ability to maintain regular attendance in the workplace and perform work activities on a consistent basis; and ability to perform work activities without special or additional supervision.  (AR 950-51.)  Plaintiff had a mild impairment in his ability to do detailed and complex instructions and a moderate impairment in his ability to interact with co-workers and the public. (AR 950.)

The ALJ found that Dr. Martinez' opinion was persuasive because it is supported by her examination of Plaintiff which was largely within normal limits.  The ALJ also found her opinion to be largely consistent with Plaintiff's conservative treatment course for his mental health symptoms which consisted of primarily outpatient therapy and psychotropic medication management.  (AR 1255.)

Substantial evidence supports the ALJ's finding that the examination of Dr. Martinez showed a substantial improvement in Plaintiff's overall intellectual functioning.  Further, the ALJ could reasonably find that Dr. Musacco's opinion was less persuasive.  Dr. Musacco noted that Plaintiff reported he believed he had a stroke the week prior but had not seen a physician.  Dr. Musacco also noted that the evaluation was difficult because he found Plaintiff to be a poor historian, with vague complaints and poor memory.  (AR 778.)  Dr. Musacco noted that Plaintiff provided a vague report of symptoms with an unclear etiology and pattern and strongly recommended that mental health records be obtained in order to shed light on these issues.  (AR 780.)  Dr. Musacco also noted that Plaintiff's intellectual functioning was substantially depressed but he had no history of an intellectual disability.  The scores were universally depressed without a pattern of strengths and weaknesses commonly observed in a head injured individual.  Dr. Musacco also found that the medical records were not particularly useful and did not describe any symptoms of a mental or emotional issue.  (AR 781.)  He diagnosed a rule out diagnosis of a neurocognitive

1 disorder based on the overt deficits noted in Plaintiff's communication skills and cognitive
2 functioning.  (AR 781-82.)  He offered a diagnosis of stimulant use disorder but found it difficult
3 to reach any other diagnostic conclusions.  (AR 782.)

4      The ALJ also found that the intelligence testing conducted by Dr. Musacco was also
5 inconsistent with the overall record showing repeated demonstrations of clear speech, normal
6 thought content and process, and an appropriate mood and affect on November 28, 2017; December
7 20, 2017; February 8, 2018; February 20, 2018; April 27, 2018; October 6, 2018; and January 24,
8 2020.  (AR 802, 932, 946-48, 957, 1026, 1107, 1153, 1213, 1217, 1256.)

9      Plaintiff argues that Dr. Musacco's findings are highly consistent with abnormal findings
10 documented throughout the record.  Plaintiff cites to the following medical records in support of
11 his argument that the ALJ cherrypicked from the record.

12      On September 28, 2017, Plaintiff was seen for therapy reporting making some progress and
13 that he is feeling sad and hearing voices.  (AR 880.)

14      On May 1, 2020, Plaintiff was seen for a medication follow up and reported that he has been
15 getting more mood swings and hearing voices, but his medications are helping him to cope better
16 and he is tolerating his medication well.  Mental status examination notes he is anxious and irritable.
17 Speech is clear and thought process is logical.  Perception is within normal limits.  (AR 2487.)

18      On June 26, 2020, Plaintiff reported he was doing okay but still hearing voices at times and
19 gets mood swings, but they are less severe and more manageable with his medication.  Mental
20 examination is noted to be unremarkable.  Plaintiff's mood was euthymic.  Speech was clear and
21 thought process was logical.  Perception and thought processes were within normal limits.  He
22 denied hallucinations and none were evidenced.  (AR 2514.)

23      In September 2020, Plaintiff reported at therapy that he was doing better than his last session
24 but still having auditory hallucinations and depression.  He reported it was under control and not so
25 severe.  He denied any thoughts of hurting himself.  (AR 2560.)

26      On October 16, 2020, Plaintiff was seen for medication management.  He stated that he still
27 hears voices and at times they tell him to harm himself, but he does not follow them.  His depression
28 goes up and down and he denied any suicidal or homicidal thoughts.  Mental status is again noted to be

unremarkable. Mood is euthymic. Speech is clear and thought process is logical. Auditory hallucinations are noted. (AR 2595.) Perception and thought content are within normal limits. (AR 2595-96.)

On January 10, 2022, Plaintiff reported feeling sad and down at times and has suicidal thoughts but is able to distract himself. He reported that his medication was working well. He denied auditory and visual hallucinations but stated he hears voices at times. Mental status examination notes his mood is down. Speech is clear and thought process is logical. Plaintiff denied hallucinations and none were evidenced. (AR 3223.) Perception, thought content, and cognition were within normal limits. (AR 3223-24.)

Plaintiff points to Plaintiff's symptom complaints contained in the record, however Plaintiff's subjective complaints are not objective findings to support Dr. Musacco's opinion. Further, the records referenced support the ALJ's finding that Plaintiff generally had normal mental status examinations. Substantial evidence supports the ALJ's finding that Dr. Musacco's opinion is inconsistent with the generally normal mental status examinations in the record.

Plaintiff also argues that Dr. Musacco's opinion is consistent with the opinions of Plaintiff's treating providers. The ALJ considered two opinions provided by Plaintiff's mental health provider and found them unpersuasive. First, the ALJ considered the September 2017 opinion of Dr. Kaura who had treated Plaintiff since February 2014. (AR 772-74, 1256.) The ALJ found that Dr. Kaura unpersuasively opined that Plaintiff's mental health conditions precluded his performance in a range of work activity associated with social interaction, understanding, concentration, and memory. The ALJ found that the opinion was largely unsupported other than a general statement that Plaintiff had not worked since 2007. Dr. Kaura also opined that Plaintiff was unable to express himself, but the ALJ found this was inconsistent with Dr. Kaura's own mental status examinations which showed that Plaintiff had clear speech. The ALJ found the opinion that Plaintiff was unable to express himself was also inconsistent with the repeated mental status findings showing clear speech and normal thought content and process. (AR 1256.)

The ALJ also considered a May 2019 medical opinion provided by Mary Venegas, MSW. (AR 1074-78, 1256.) The ALJ found that Ms. Venegas unpersuasively opined that Plaintiff's

1   conditions preclude mental work activity in most area of mental functioning.  The ALJ found that

2   the opinion is almost entirely unsupported without any reference to any objective support and was

3   further inconsistent with the overall record including a largely conservative mental health treatment

4   course primarily consisting of outpatient therapy and psychotropic medication management.  (AR

5   1256.)

6        Plaintiff has not challenged the ALJ's findings that the opinions of Plaintiff's treating

7   physicians are unpersuasive finding and has therefore waived the issue.  Ghanim v. Colvin, 763

8   F.3d 1154, 1165 (9th Cir. 2014).  The opinions of Plaintiff's treating providers that have been found

9   to be unpersuasive do not support Plaintiff's argument that the ALJ erred in discounting the opinion

10  of Dr. Musacco.

11       The Court finds that the substantial evidence supports the ALJ's finding that Dr. Musacco's

12  opinion was unsupported and inconsistent with the objective evidence in the record and was

13  therefore unpersuasive.

14                                          **V.**

15                            **CONCLUSION AND ORDER**

16       In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error

17  warranting remand of this action.

18

19

20

21

22

23

24

25

26

27

28

1    Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

2  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be

3  entered in favor of Defendant Commissioner of Social Security and against Plaintiff David Anthony

4  Rodriguez.  The Clerk of the Court is directed to CLOSE this action.

5

6

7  IT IS SO ORDERED.

8  Dated:   **August 7, 2024**

UNITED STATES MAGISTRATE JUDGE